WILL SPENCER

*v.*

DIXIE FINANCE COMPANY.

(*Nashville,* December Term, 1958.)

Opinion filed July 27, 1959.

Rehearing denied September 3, 1959.

486

SAM M. GOLDBERGER, Memphis, for plaintiff in error.

WILLIAM D. HAYNES, Memphis, for defendant in error.

Mr. Justice Burnett, delivered the opinion of the Court.

The sole question involved in this case is whether or not it is necessary for the one cast in a lawsuit before the General Sessions Judge to pray and be granted an appeal by the General Sessions Judge before the appeal is valid, and the Circuit Court, where the case is appealed to, must try it on its merits.

The defendant in error sued the plaintiff in error on a note in the General Sessions Court and was awarded a judgment by that court on September 17, 1958. On September 19, 1958, the defendant filed with the Clerk of the General Sessions Court a pauper's oath in lieu of an appeal bond in which it is stated that the defendant is unable to bear the expense "of an appeal this day prayed for and granted him from a judgment rendered against him."

When the case was reached in the Circuit Court the defendant in error moved to dismiss the appeal because no appeal was prayed for and granted by the Judge of the General Sessions Court. It was conceded by counsel for the plaintiff in error that he did not formally appear before the Judge and pray an appeal but that he only filed the pauper's oath in lieu of an appeal bond within two days from the time the judgment was rendered against his client. The Circuit Judge after reviewing

many of our old cases held that the appeal must be dismissed because there was no appeal prayed and granted by the Judge of the General Sessions Court. The case has been seasonably appealed to this Court and we now have the matter for determination.

■ In an appeal from a court of record it must be shown by the minutes of the court that an appeal has been prayed and granted. This Court in *Teasdale & Co. v. Manchester Produce Co.*, 104 Tenn. 267, 56 S.W 853, said:

"It has been held in a number of reported cases that an appeal, to be effective, must not only be prayed, but granted, and the minute entry must so show. * * * (Citing authorities) A different rule prevails in appeals from Justices of the Peace, and in such appeals the bond is prima facie evidence of the grant of appeal. Shannon's Code, sec. 5990." (Now Section 19-426, T.C.A.)

■ The rules governing procedure and appeals in General Sessions Courts are the same as those in the court of a Justice of the Peace, with certain exceptions not here material. *Hancock v. Davidson County*, 171 Tenn. 420, 104 S.W.2d 824. Thus it is that our Statutes governing appeals and the trial of cases before Justices of the Peace are applicable to the trials in the Sessions Court. Section 27-501, T.C.A., gives the right to any person dissatisfied with the Justice of the Peace's judgment and others two entire days, exclusive of Sundays, to appeal to the next term of the Circuit Court. Section 27-503, T.C.A., provides that before the appeal is granted the person appealing shall give a bond with good security or otherwise take the pauper's oath. In neither of these

Sections is it required that the appeal must be prayed and granted by the Justice of the Peace. When we look to the Statutes in cases tried in courts of record such as Section 27-310, T.C.A., we find that where the parties there are dissatisfied with a judgment or decree that the statute requires that the party ''may pray and obtain an appeal therefrom''. Some such language is used in the various Statutes in appeals from courts of record. The appeal obviously ''is a judicial act''. *Andrews v. Page,* 49 Tenn. 634, 638; *Childress v. Marks,* 61 Tenn. 12, 14. Thus is the reason for the statement made by the Court in the Teasdale case, supra, and which is followed down through the years as to the requirement in cases appealed from a court of record.

█ Pleadings before a Justice of the Peace may be by word of mouth in all cases with the single exception of pleas in abatement. A rather interesting article on proceedings before a Justice of the Peace appears in 10 Tennessee Law Review, at Page 180. It was prepared by the Honorable Richard N. Ivins, who at the time was a practicing attorney in Athens.

This article shows how the practitioner acts on appeals from an adverse judgment before a Justice of the Peace. In other words he files his bond or his pauper's oath and then the Justice on whatever form he has, if it is filed within time, takes the papers to the Circuit Court where any defect, question of the sufficiency of the bond or whether or not the man should be depauperized or things of that kind, are treated on proper motion, that is, on motion made in the Circuit Court.

One reading the numerous old cases on the practice before a Justice of the Peace gathers from statements

made in the these cases that for the appeal to be effective it must not only be prayed but must also be granted, and the fact must appear on the papers. *Jackson v. Baxter,* 73 Tenn. 344; *Douglass v. Neguelona,* 88 Tenn. 769, 771, 14 S.W. 283; *Bailey v. State,* 95 Tenn. 391, 32 S.W. 250; and see likewise Gilreath and Caruthers' History of a Lawsuit, 7th Edition, Sec. 509, Page 555; and Higgens & Crownover, Tennessee's Procedure and Law Cases, Secs. 1648, 1649, where the author states that if the papers returned into court do not contain the statement by the Justice that an appeal was prayed for and granted the appeal would be dismissed. In each of these texts though it is shown that this defect may be cured in the Circuit Court and that when the appeal bond or the pauper's oath which is returned by the Justice of the Peace shows that the appeal was prayed and granted then this is *prima facie* true that it has been done. See *McAnally v. Stansell,* 177 Tenn. 376, 150 S.W.2d 724; *McCarver v. Jenkins,* 49 Tenn. 629, and others.

By examination of these cases it is found that this statement that the appeal must be prayed and granted by the Justice of the Peace is more or less the statement that a lawyer or a judge would use and that it is not determinative of the lawsuit. As for instance in *Jackson v. Baxter,* supra, the court there makes the statement, it is true, that the appeal must be prayed and granted, but it is found upon reading the opinion that there really had been no appeal granted and if there had been no appeal granted the defects then could not be cured in Circuit Court. In other words in this case there was no bond or pauper's oath consequently there was no appeal granted. It is to be noted that in reading each of these cases that they primarily went off on the proposition that no bond

was given or no pauper's oath filed within time, though the language here under discussion was used in part of the language of the court.

■ It is the duty of the courts, and as provided by Statute (Section 19-424, T.C.A.), in reviewing proceedings had before a Justice of the Peace to regard them with unusual indulgence and with great liberality so that the ends of justice may be reached. The Statute referred to in this instance (Section 19-424, T.C.A.) says in effect that every intendment in favor of the sufficiency, etc., of these proceedings shall be indulged in by the court. *Ross v. Bandy,* 165 Tenn. 499, 56 S.W.2d 754.

■ Following this line of reasoning Section 19-425, T.C.A., provides for trials de novo and among other things says:

"No * * * case, * * * shall be dismissed by such court for any informality whatever, * * *".

Thus it is that under this Section and this rule various and sundry amendments have been made and added in the court of record, such as allowing bonds to be signed when it is contested whether they had or not filed one in the court below. This Section along with Section 20-1501, T.C.A., and 20-1514, T.C.A., applying to courts of record show a clear intention on the part of the Legislature to allow such amendments in the Circuit Court as will permit the case to be heard on its merits. *Walker v. Aetna Cas. & Surety Co.,* 175 Tenn. 118, 132 S.W.2d 219. Under this Section the instant case certainly should have been considered. The appeal should have been allowed because this unquestionably was one of those informalities (praying formally to the Justice of the Peace for

an appeal) that it must be conceded that the Bar generally never practiced. What we are trying to say is this, that not one time in a thousand will the one who is cast before a Justice of the Peace or before the General Sessions Judge as far as that goes, go to this Judge and pray an appeal and have the appeal granted. It is the duty of the Justice of the Peace or the General Sessions Judge when the bond is filed or the pauper's oath taken within the time to transfer these papers in that way to the Circuit Court. When this is done it certainly makes a *prima facie* case that an appeal was prayed and granted. See *McAnally v. Stansell,* supra; *Walker v. Aetna Cas. & Surety Co.,* and cases there cited. Merely because the formality of going before the Justice of the Peace or the Judge of the General Sessions Court and asking that an appeal be granted is not necessary. If the Legislature had thought that such a thing was necessary or at all practical, it would have provided so in one of the various Sections we have referred to applicable to the Justice of the Peace.

█ Section 19-426, T.C.A., provides that where an appeal bond is returned with the papers that this is prima facie evidence that the appeal was prayed and granted but that this presumption may be rebutted by proof that this was not done and obtained within the time allowed by law. Under this Code Section is found the cases above referred to of *Jackson v. Baxter, Douglass v. Neguelona,* and others which hold that when the bond or the pauper's oath does accompany the papers that this is prima facie that the required steps have been taken to perfect an appeal. We think, too, that what the Legislature means here when it says that this presumption may be rebutted by proof "that an appeal was not prayed and obtained

within the time allowed by law'', means that proof may be offered to show that this bond or pauper's oath was not filed within the time allowed by law. The cases go on to hold, too, that even if this were true if it were not filed within time through some informality or something then they are allowed to amend and give the necessary bond or pauper's oath. When the papers show, and it is not rebutted, that the bond or the pauper's oath was filed within the statutory time and this bond or pauper's oath contained the language, appeal prayed and granted, the mere fact that it appears that counsel did not actually go before the Judge and pray an appeal which was granted, has no effect whatsoever on it because the mere statement in the papers and the filing of them by the magistrate or the General Sessions Judge with the Circuit Court is sufficient within itself.

Thus it is, for the reasons herein stated, we think that the trial court was in error in dismissing this appeal. The result is that his judgment dismissing the appeal will be reversed and the costs of appeal to this Court will be taxed against the Finance Company. The cause is remanded to the Circuit Court for further proceedings.

## On Petition to Rehear

The defendant in error has filed herein a courteous and dignified petition to rehear because it is said that the opinion which we released on July 27, 1959, overlooked the ruling in an opinion of the Court of Appeals of the Middle Division in the case of *Rutledge v. Swindle,* as reported in 319 S.W.2d 488, 491.

This case (*Rutledge v. Swindle,* supra) was not overlooked by this Court. This case is in no way similar to

the case now before us. In the Rutledge case the opinion shows that "the record does not show whether defendants actually filed these oaths with the Clerk or not." The basis of the opinion of the Court of Appeals case (*Rutledge v. Swindle*) is that the General Sessions Court "had no power to grant an appeal to the Circuit Court ten days after the entry of judgment in favor of the plaintiff in the Court of General Sessions."

Thus it is seen from the quotations above that the case relied on now in the petition to rehear is in no way in point.

We had this case before us before writing the original opinion and are firmly convinced from what is said above that it in no way favors the petition to rehear but in fact, upon a careful reading of the Swindle opinion, it is seen that it in effect is in agreement with our conclusion as shown by the original opinion. For the reasons thus stated the petition to rehear will be denied.